Good morning. May it please the court, my name is Jia Kim, appearing on behalf of Appellant Ibrahim Yousef. This case of first impression in this circuit involves what the district court candidly admitted was a quote, blunder beyond belief, namely allowing two alternate jurors to participate in deliberations for three hours before they were removed from the jury room, more than three days after they had entered. The government concedes that this was error, and therefore the only question is whether the government can meet its burden to show that there was no reasonable possibility of prejudice, that the, that no reasonable possibility that the alternate's participation could have affected the verdict. First of all, it's important in this case to recognize that the government does bear the burden. On its facts, this case is similar to the Supreme Court's decision in Olano, a case which is better known for its articulation of the plain error standard, but in this case it's without the plain error. And in Olano, it became clear that because of concerns for jury privacy and secrecy, as well as the evidentiary rule that protects the sanctity of jury deliberation, the burden of showing prejudice or the absence of prejudice, so whether we're under harmless error or plain error, is very important in such cases. In fact, in Justice Kennedy's concurrence in Olano, he suggests that the allocation of this burden may be outcome determinative in many jury intrusion type cases. Olano's also important because it makes clear that the inclusion of alternates is a kind of jury intrusion case. In its factual findings in this case, the district court wrote that this is not a case in which outsiders affected the jury. And we would submit that that's clearly erroneous because if you look at Olano, when looking at what to do with alternates who have been in the jury room, in that case one alternate, it looks to other forms of jury intrusion, not only comments by outsiders, such as bailiffs, but also extraneous information type cases. Let me ask you a question, counsel. And I guess we're really at this particular situation. We have a district court who realized that there was a problem. And having realized that there's a problem, I guess I looked at the case law and I'm trying to determine what the situation is. It doesn't seem to me that just because there was a juror, an alternate or two alternates in the jury room, that that is per se mistrial. You'd agree with that? Yes, Your Honor. So you'd agree that we're now looking to find a reasonable probability test? Possibility, Your Honor. Sorry. All right. Reasonable possibility test. All right. So if we're going to look at a reasonable possibility test, we've got to have some way to determine whether there is a reasonable possibility. And we have suggested, as the Supreme Court is generally not opposed, I guess, having the judge look at, did the excused juror have the opportunity to influence the jury before being excused? That's really what he's trying to deal with, is it not? Yes, Your Honor. And this judge had a hearing to try to determine that. And listen, talking to both jurors, talking to all those who were there, trying to make that determination. He did make a determination. Now, is that determination, what is the standard of review? Well, the general standard of review for mistrial or new trial is abusive discretion. But now we're at the hearing. What is the standard of review for which I would need to review the old E.J.'s decision? Now, I ask you that because I was the old E.J. sitting in that place before. Never with this problem, thank God. But nonetheless, I was there. So what's the standard of review? We would argue, well, if this Court views this case as a jury intrusion case, which we argue that it should, the standard of review is de novo, even in a mistrial situation, if the district court used the wrong prejudice standard to guide its analysis. Well, but what we're really looking at, if he used reasonable plausibility standard, and he's asking if the juror had the opportunity to influence the jury, and he's asking all the questions, and he's making these determinations, then at that point, it seems to me, and I guess I'm trying to figure out, how do I get above abusive discretion here? Well, Your Honor, there's no evidence that he actually used the reasonable possibility standard. That's he mentioned. But does he have to say it to use it? I mean, can you not emphasize what he did by looking at the language he used? I think the language is crucial here because it also interplays with the burden and who bears the burden. So there's a difference between being actually prejudiced, which happens in ex parte contact cases, and a reasonable possibility of prejudice, which this Court suggests in cases like Rosenthal is an easier standard to meet for the defendant. Let me ask you the next question, then. He gave, not only did he involve himself in this discussion, but he gave a curative instruction, which further trying to make sure that he had solved the problem. And certainly the curative instruction goes some way towards rebutting this presumption, and not an irrebuttable presumption by any means, but the presumption of prejudice, which arise from the fact we know the alternates participated. In fact, in the United States v. McFarland, our case, we say prejudice can be presumed in these situations. However, there's no plain error in that particular instance. So therefore, we're relooking at it. And then it says, given instruction to begin at the beginning again, and no prejudice will be inferred therefrom. I think in McFarland, again, it's key that that was a plain error case. And there's some sort of unique factors in this case. So you think that if nobody objected, we'd operate differently? I think we would, because then Mr. Youssef would have the burden to show that he was prejudiced, which he probably could not do, again, because of Rule 606 and the evidentiary prohibitions on questioning the jury. The district court here rejected a request from the government to ask the jury right before the verdict was entered whether their verdict was independent of or in any way impacted by the alternate's participation. And I think that was proper in view of Rule 606. But what Rule 606 doesn't prohibit, and this Court has endorsed in a couple of cases, such as Bay-Ramoglou and Mills, is coupling the precautionary, the curative instruction with a precautionary measure that asks whether the jurors, the sitting, remaining jurors could disregard what had happened before. Well, can I just, I want to be clear on what do we think was the standard that the district court applied? Because I'm not clear from this order whether it applied an actual prejudice standard or a reasonable possibility of prejudice standard to these facts. And it would make a difference, or would it? I believe it would, Your Honor. And I agree that the order's somewhat unclear on what this precise standard he's applying is. It doesn't say reasonable possibility. It cites Acevedo, which has a reasonable possibility standard. I was going to say, why did he cite Acevedo? He cites Acevedo, but he also says he makes a finding, well, he says we don't presume prejudice, but then he makes a finding that there was not prejudice. Exactly. And it's not clear if he's saying there was no actual prejudice, which if he found that, he could still be applying the reasonable possibility standard. He could, Your Honor. I think the clue we have here is there were several decisions. And in the first decision, which occurred at ER 20 and 21, he says he's looked at Olano and that he's also looked at these juror misconduct-type cases. And the case he cites there is Caliendo, which is a habeas case. And I think that's important because Caliendo is an ex parte contact case, not an extraneous information case. So in those kind of cases, it is an actual prejudice standard that applies. So it's not explicit what standard the district court was using or where the burden was allocated. Well, the burden, he said, was allocated on the defendant. But, again, you can't see that operative in his order. Well, he says that Defendant Yosef was not prejudiced by the participation, therefore, he will not declare a miscrial. Well, could there be a reasonable possibility of prejudice? And is it consistent to say there's a reasonable possibility of prejudice, but he was not prejudiced? It's difficult to say, Your Honor. I think there's no way that the district court really could have known if Mr. Yosef was or was not prejudiced because he couldn't ask the key question because of Rule 606 here, namely, what affected the juror's verdict. So that is why we go to this reasonable possibility of prejudice. If he was, indeed, holding Mr. Yosef to showing some prejudice, obviously, that would have been the wrong standard and Mr. Yosef would have been unable to do that for the same reason. It's important to note that right at the beginning of this discussion, at E.R. 10, the government asked the district court to get assurances from each juror that they could disregard what had happened before, which was important in this case, in this Court's cases of Mills and Beramoglu. And in those cases, there were just very brief remarks that had to be disregarded. Here, we're talking about three hours. There was an intervening weekend. Plus, the jury of 12 was allowed to go on by themselves for five hours without re-instruction. And I think in this situation, just on these facts, and not in your typical curative instruction case where the curative instruction is given right away and can target one discrete piece of information, he should have asked the jurors whether they could go forward, as in the words of the Seventh Circuit in Warner, whether they could and would put round one behind them. All right. Thank you. Thank you for your argument. Good morning, Your Honor. May it please the Court, my name is Paul Crane, and I represent the United States. How does this happen? I mean, I didn't ñ I've never seen it happen before, and now there's a bunch of cases where this happens. Yeah. No, it's admittedly a very rare situation. From the record, it's unclear. The district judge, Judge Fease, speculated that either it's because he failed to, when giving the initial instructions to the jury to inform the alternates, or that more likely a member of his staff failed to pull the alternates aside and the jury went back to deliberate. I don't think the district judge knew, or the government, or the defense, how this happened. Or it's in a state not like Idaho who can afford to have 14 jury chairs instead of 12. I think we should chalk it up to the extra chairs. I mean, if you've got 14 instead of 12, you never think about drawing 12. If you only got 12, you don't have to worry. Where does the government contend is the appropriate legal standard that the district court should have applied? We think the standard that the district court should have applied was first that the burden was on the government, which the district court explicitly said it placed the burden on the government below, and that the ñ whether there is a reasonable possibility that the error, in this case,  And while the district judge, in his order denying the motion for new trial, simply used the shorthand, there was no prejudice. I think, as was discussed earlier, the citation to Acevedo indicates that the reasonable possibility standard is what was used. Okay, but don't you think that if you're applying the reasonable possibility standard, interviewing the jurors and taking evidence as to whether or not there's actually prejudice is somewhat an inconsistent procedure? Well, I think when the judge was interviewing the alternates, which I assume is what you're referring to, Your Honor, it was to determine whether or not there was participation, not the content of deliberations. Whether there was participation, how much participation. Correct. And that would factor into an actual prejudice determination, not a reasonable possibility. Well, I think it would actually factor into both. I think for the ñ whether there's a reasonable possibility, that sort of objective standard, knowing the degree of participation, whether it was very extensive, would be relevant to that analysis as well. So I don't think it's necessarily inconsistent. Your Honor, how could you even measure that? You have one juror saying, well, I made a couple of comments, whatever. Well, that would have ñ whether ñ you can't really measure that unless you know the context. Well, I agree with that, Your Honor, and I think if what happened in this case was that all we knew is the alternates participated and no curative measures such as the clean slate instruction in order to disregard whatever happened beforehand did not take place, then the government would be in a difficult position, and we probably wouldn't even be here. Well, in McFarland, that statement was first in dicta, but even if this Court found it persuasive and correct. Well, if we found it applicable, we would follow it. Yes, ma'am. Yes, Your Honor. That statement was made in reference to a 14-person jury deliberating all the way through reaching the verdict and the announcement of the verdict, which was not the case here. The error was discovered, the alternates were removed early in the deliberations before a verdict had ever been reached, and then a curative instruction was given by Judge Fees. And then the newly constituted jury post-instruction was just 12 jurors. They deliberated for over seven hours, which was a substantial period of time, and then returned the verdict. So unlike that statement in McFarland, there was a 12-person jury here that returned the verdict, not a 14-person jury. So this situation, I don't think that statement would apply here. What is the standard? I mean, I very much appreciate Judge Wardlaw's questions because I think they're very important, but I guess my worry is that I don't want us to focus too much on the wording necessarily, but I do want to focus on what is the standard that one should use. As I understand the standard, it is that there is a reasonable possibility that the violation actually prejudiced the jury's final verdict. So you're really looking at those words in the whole about the reasonable possibility. Isn't that the standard? The government grew that, Your Honor. I think the standard isn't whether there is a reasonable possibility of prejudice, but rather reasonable possibility that the error affected the jury's verdict. And that's basically the equivalent of whether there was prejudice. And so it's an objective inquiry, given the reasonable possibility language. That's my point. It's an objective inquiry. So why was – I think Judge Feist, I respect him measurably, but I think he was sort of taken aback at the situation and there's not a lot of precedent. And maybe if it's an objective test, what you shouldn't be doing is asking questions of some of the jurors and not all of the jurors and that sort of thing. I don't know. I mean, that sort of thing. Other issues that we have to think about. But, okay, let's say we agree that it's a reasonable possibility standard at the district court level. What is our standard of review from the appellate court level? The standard review here is abuse of discretion, which is the traditional standard review for reviewing a motion, a denial of a motion of mistrial or a motion for a new trial. As we cited in a brief, there was a case recently, the Lopez-Martinez case, which said juror misconduct cases are reviewed de novo. I think there might be some question whether this is even a juror misconduct case, but assuming it is, there are many more precedents from the circuit that say juror misconduct cases are reviewed for abuse of discretion. And I think what happened in Lopez-Martinez, it was citing to a case from the circuit United States v. SIA, and in that case there was a constitutional challenge, which there was not – there is not one here. And furthermore, the defense in its opening brief also said the appropriate standard review was abuse of discretion. So I think – Well, abuse of discretion means a legal error, and abuse of discretion as a standard means different things in different contexts. Well, I agree, Your Honor. So we have to sort of define what – I agree with you that this is not a juror misconduct case. I agree that if this Court were to find a legal error of some sort, then that would qualify as an abuse of discretion. But we do have a legal error here. Well, I think – It didn't follow 24C3. Well, let me clarify that, Your Honor. Yes, there is obviously and indisputably a violation of Rule 24C3. With respect to the abuse of discretion standard, it's whether there is a legal error when the district court denied the motion for mistrial or denied the motion for new trial. That would be to say if he, as a matter of law, was errored in denying those motions. So while there is undoubtedly an error with respect to the alternate participating, that error was discovered and successfully cured through his remedial measures. So the question isn't whether an error took place at all. I think we all agree that did happen. But whether or not the remedial steps that Judge Fees took. Well, can it ever be cured once you have – could it ever really be cured? I mean, I know that we've said this is an instructional error, but it seems to have had that influence for three hours. How do you tell someone just to forget that? If Your Honor was concerned that that might not be possible, I would point to the alternate substitution context. And Federal Rule of Criminal Procedure 24C3 lays out the steps in which a alternate can be substituted in for a regular juror after liberations have begun. And that can happen so long as two conditions are met. The court ensures that the alternate did not discuss the case with anyone. And second, it issues a clean slate instruction, ordering the jurors to start the liberations over and disregard anything that happened. So that rule is premised almost entirely on the belief that jurors can and do disregard anything that happened in initial round of liberations. And there's no reason that the same premise doesn't apply here. Would you look at the outcome as well? I believe – was he convicted of some of the counts and not others? Is that what happened here? In this case, yes, Your Honor. So would that influence a determination of whether there was a reasonable possibility of actual prejudice? I see my time is running out. That's my answer. If there is. I think it's certainly a – She's the chief. When she says do it, you do it. Yes, Your Honor. Paulson and I are down here. We're bound to do that. Yes, Your Honor. I think the split verdict is relevant to the consideration. How much weight it plays, it probably is – What about whether the evidence was overwhelming as to the guilt on the two counts of conviction? I think in this case the government isn't arguing in the sense that it should be harmless error because of overwhelming evidence. It may be other cases that would be a relevant consideration. But in this one, I don't think the Court needs to get into whether there was overwhelming evidence or sufficiency or anything like that. But we really are finding, if we go with this, as has been done in other courts, that because there is no reasonable possibility of actual prejudice, that therefore there is harmless error and the jury should continue, right? The verdict should be affirmed. Yes, Your Honor. That's correct. All right. Thank you. Thank you, Your Honor. I thank both counsel for their excellent argument on this novel issue. U.S. v. Yosef will be submitted.
judges: Wardlaw, Rawlinson, Smith N. R.